UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ESSIENNE TSOLUMBA, *on behalf of herself and all others similarly situated*, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SELECTQUOTE INSURANCE )<br>SERVICES and ONLINE INSURANCE )<br>SOLUTIONS LLC d/b/a DIGITAL )<br>THRIVE, )<br>)<br>Defendants. )<br>) | CASE NO.: 5:22-cv-00712<br><br>JUDGE BRIDGET MEEHAN BRENNAN<br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is Defendant Online Insurance Solutions LLC's ("OIS") Motion to Dismiss (Doc. No. 28) and Defendant SelectQuote Insurance Services' ("SelectQuote") Motion for Judgment on the Pleadings (Doc. No. 37). Both motions are fully briefed. (Doc. Nos. 29, 31, 38, 39). For the reasons that follow, both motions are DENIED.

**I.     BACKGROUND**

As alleged, Plaintiff Essienne Tsolumba uses telephone number 330-XXX-8439 for personal, rather than business purposes. (Doc. No. 20 at 143, 146, ¶¶ 30-31.)[1] Plaintiff's phone number has been listed on the National Do Not Call Registry ("DNC Registry") since August 3, 2010. (*Id.* ¶ 32.)

OIS is an insurance agent for SelectQuote. (*Id.* ¶ 3). Plaintiff has not sought information or business from either OIS or SelectQuote. (*Id.* ¶ 29). Plaintiff received eight text messages

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

1

from OIS promoting SelectQuote and its services. (*Id.* ¶¶ 33, 36-37 (including copies of text messages).)[2] Plaintiff replied "stop" to each text message she received from OIS. (*Id.* ¶ 34).

On May 3, 2022, Plaintiff filed a class action complaint. (Doc. No. 1.) On February 15, 2023, Plaintiff filed her First Amended Complaint ("Complaint"). (Doc. No. 20.) The Complaint alleges that OIS violated the Telephone Consumer Protection Act of 1991 ("TCPA") by sending text messages without "the requisite consent to contact [] individuals, who, like [] Plaintiff were listed on the National Do Not Call Registry." (*Id.* ¶ 3.) Plaintiff further alleges that OIS's continued contact with individuals despite their request to no longer receive communications also violated the TCPA. (*Id.* ¶ 4.) Plaintiff alleges that SelectQuote is vicariously liable for OIS's actions because SelectQuote "knew or reasonably should have known that [OIS] was violating the TCPA on SelectQuote's behalf but SelectQuote failed to take effective steps within its power to cause them to stop." (*Id.* ¶ 47).

Plaintiff's First Amended Complaint includes two putative classes:

**National Do Not Call Registry Class:** All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Online Insurance Solutions (3) to promote SelectQuote services (4) within a 12-month period, (5) from four years prior to the filing of the Complaint.

**Do Not Call Class:** All persons in the United States whose, (1) telephone numbers have previously been provided to Online Insurance Solutions in connection with a request to no longer be called (2) but received at least two telephone solicitations from or on behalf of Online Insurance Solutions in a twelve month period (3) promoting SelectQuote Services (4) including at least one telephone solicitation from or on behalf of Online Insurance Solutions more than 30 days after requesting to no longer be called (5) from four years prior to the filing of the Complaint.

---

[2] Plaintiff does not allege when or over what time period she received these text messages from OIS. The images of the text messages she received and her responses contain partial dates such as "Wednesday Nov 3 – 11:19 AM" or "Tuesday 13:37," but include no further information. (*See* Doc. No. 20 at ¶ 36.)

(*Id.* ¶ 52.)  The Complaint asserts one cause of action for violation of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), on behalf of both putative classes, and seeks injunctive relief and statutory damages, which include up to $1,500 for each violation of the TCPA.  (*Id.* at 157.)

On April 10, 2023, OIS filed a motion to dismiss the Complaint.  (Doc. No. 28.)  After this motion was fully briefed, SelectQuote filed a motion for judgment on the pleadings on May 22, 2023.  (Doc. No. 37.)

## II. LAW AND ANALYSIS

### A. Standards of Review

#### 1. Motion to Dismiss

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678.

A complaint need not detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Bare assertions," basic recitations of the elements of the cause of action, or "conclusory" allegations are not entitled to the assumption of truth and, without more, do not satisfy the Rule 8 notice standard. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

2. **Judgment on the Pleadings**

"After pleadings are closed—but early enough not to delay trial—a party may move for a judgment on the pleadings." Fed. R. Civ. P. 12(c). Essentially, a motion for judgment on the pleadings "constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard." *Norfolk S. Ry. Co. v. Dille Road Recycling, LLC*, No. 1:20-cv-01053, 2021 WL 388773, at *2 (N.D. Ohio Feb. 4, 2021) (citing *Holland v. FCA US LLC*, 656 F.App'x 232, 236

4

(6th Cir. 2016)).  As such, a judgment on the pleadings should be granted where, "construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to a judgment as a matter of law."  *Kenyon v. Union Home Mortg. Corp.*, 581 F.Supp.3d 951, 955 (N.D. Ohio 2022) (citing *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021)).  On a Rule 12(c) motion, the court "must follow the Supreme Court's changes to the pleadings standards" in *Iqbal*, and *Twombly* as described above.  *See Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020).

### B. The Telephone Consumer Protection Act of 1991

In 1991, Congress enacted the TCPA in part to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1); *see also Mims v. Arrow Fin. Serv., LLC*, 565 U.S. 368, 372 (2012) ("Congress reported many consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." (internal quotations and alterations omitted)).  Subsequently, Congress authorized the FCC to promulgate regulations to achieve the TCPA's goals.  47 U.S. § 227(c)(3).

Among the relevant FCC regulations is the DNC Registry.  *See Charvat v. NMP LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011) (providing statutory overview of the TCPA).  The DNC Registry allows a consumer to register her telephone number in order to avoid receiving telephone solicitations at that number.  *Spurlark v. Dimension Serv. Corp.*, No. 2:21-cv-3803, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022).  If a number is listed on the DNC Registry, that entry must be "honored indefinitely, or until the registration is cancelled by the consumer or the telephone is removed by the database administrator."  *Id.* (quoting 47 C.F.R. §

5

64.1200(c)(2)). Section 227(c)(5) "add[s] teeth to" the DNC Registry by creating a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-cv-152, 2023 WL 361136, *3 (S.D. Ohio Jan. 23, 2023) (citing 47 U.S.C. § 227(c)(5)).

### C. The Parties' Arguments

#### 1. OIS's Motion to Dismiss

OIS's motion to dismiss argues that Plaintiff cannot state a claim under the TCPA because the text messages from OIS "were not calls made to a residential telephone line." (Doc. No. 28 at 187). OIS emphasizes that the DNC Registry was created "to protect *residential* telephone subscribers' privacy rights." (*Id.* (citing 47 U.S.C. § 227(c)(1)).) OIS contends that Plaintiff cannot sue under this section of the TCPA because "the statute, by its express terms, applies to residential (not cellular) phone subscribers only." (*Id.* at 188.) OIS argues that the statute's distinction between cellular and residential telephone lines was intentional and deliberative, as the two "terms are not used interchangeably." (*Id.* at 189; *see* Doc. No. 31 at 227.) OIS asserts that Plaintiff's allegations that her cell phone number is a residential phone line is both unsupported and immaterial "because the statutory scheme and text plainly distinguishes cellular calls from residential calls." (Doc. No. 28 at 191.) OIS asserts that the Court should not construe "'residential telephone subscriber' to encompass a 'residential cellular telephone subscriber'" because this interpretation would "read an absent word into the statute" and "rewrite rules that Congress has affirmatively and specifically enacted." (Doc. No. 31 at 229 (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004)).)

6

OIS acknowledges that there is no controlling law from the Sixth Circuit but argues that courts considering this issue have held that the private right of action created by § 227(c) does not apply to cellular phones. (Doc. No. 28 at 192 n.5.) OIS further acknowledges that "other courts have ruled that cellular phones may be treated as residential phones," but asserts that these opinions do not adequately justify either their departure from the plain terms of the statute and or their reliance a 2003 Order from the Federal Communications Commissions ("2003 FCC Order"). (*Id.* at 192 and n.6.) According to OIS, the 2003 FCC Order "broaden[s] the do-not-call regulations" but does not expand the private right of action created by 47 U.S.C. § 227(c) to include wireless phones. (*Id.* at 193.) Therefore, according to OIS, interpreting the 2003 FCC Order as "extending liability under § 227(c) to include calls made to 'wireless' phone numbers listed on the DNC registry would deviate from the clear language of the statute and exceed the authority granted by Congress." (*Id.* at 194.)

Plaintiff claims that her allegations that she uses her cellular phone for personal purposes and that her number is on the DNC Registry meet the pleading requirements at this stage. (Doc. No. 29 at 202.) Plaintiff further highlights that because the DNC Registry is only open to residential subscribers, the Court should presume at this stage that her cellular phone is a residential number. (*Id.* at 203-04).

Next, Plaintiff asserts that the DNC Registry applies to *all* consumer telecommunications services because "[r]eading the term 'residential' to exclude other services, such as cellular telephone services for personal, household purposes is inconsistent with multiple canons of construction." (*Id.* at 204.) Plaintiff contends that if Congress meant to exclude cellular phone users from the protections for "residential subscribers," it would have done so. (*Id.* at 210.) As such, Plaintiff highlights cases in which courts both within and outside this Circuit that have held

7

that DNC Registry protections apply to cellular phones. (*Id.* at 208-09.) Plaintiff argues that the Court should apply the "ordinary, contemporary, common meaning" to the term "residential" and assess how she uses her phone rather than the underlying technology. (*Id.* at 204-05, 210.) Plaintiff emphasizes that "residential" telephones use a broad range of phone lines including "copper, fiber, T1, IDSN, wireless, or wireline," and argues that that the "dispositive analysis is [] treatment and utilization" of these lines. (*Id.* at 211.)

In response to OIS's arguments regarding the 2003 FCC Order, Plaintiff argues that the Hobbs Act precludes the Court from invalidating the Order. (*Id.* at 206-07.) Plaintiff asserts that this Court may not review the FCC's regulatory actions because the Hobbs Act grants "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all finals orders" of the FCC to courts of appeals. (*Id.* at 207.) As such, Plaintiff highlights that under the 2003 FCC Order, the Court should "presume wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers.'" (*Id.*)

### 2. SelectQuote's Motion for Judgment on the Pleadings

SelectQuote's Motion for Judgment on the Pleadings makes many of the same arguments presented in OIS's Motion to dismiss. SelectQuote argues that where a statute does not define a term, such as "residential telephone subscriber," the Court's inquiry must stop if an examination of the "ordinary meaning" of the term yields a clear answer. (Doc. No. 37 at 278-79.) SelectQuote further argues that Congress "intentionally and purposely" excluded cellular phones from § 227(c) because they "do not present the same concerns as residential telephones." (*Id.* at 280 (quoting *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023)).) Like OIS, SelectQuote argues that 2003 FCC Order cannot expand § 227(c) to include cellular phones. (*Id.* at 281.) SelectQuote further asserts that the 2003 FCC Order does

8

not warrant any deference because Congress's intent to exclude cellular phones from DNC Registry protections is clear and unambiguous. (*Id.* at 281-82.)

Plaintiff's arguments in opposition to SelectQuote's motion are virtually identical to her arguments in opposition to OIS's Motion to Dismiss.

**D. <u>Analysis</u>**

To state a claim under § 227(c), a plaintiff must prove that he or she is a "residential telephone subscriber." 47 C.F.R. § 64.1200(c); *see also Stevens-Bratton v. TruGreen, Inc.*, 437 F.Supp.3d 648, 655 (W.D. Tenn. 2020). In the absence of a statutory definition, the FCC has defined "residential telephone subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(d); *Stevens-Bratton*, 437 F.Supp.3d at 655; *Kemen*, 2023 WL 361136 at *5.

Both OIS and SelectQuote argue that Plaintiff cannot show that she is a "residential telephone subscriber" as required by the TCPA. Put differently, OIS and SelectQuote ask this Court to join the others that have found that "calls to cellular telephones, in part because of their inherent characteristics, categorically fail to satisfy the 'residential telephone subscriber' element of the relevant TCPA regulations." *Stevens-Bratton*, 437 F.Supp.3d at 655 (collecting cases). The crux of these holdings, as discussed in *Cunningham v. Rapid Response Monitoring Servs., Inc.*, for example, is that the TCPA "generally distinguishes between 'residential' lines and other protected lines, although it provides some protections to the owners of both." 251 F.Supp. 3d 1187, 1201 (M.D. Tenn. 2017); *see also Gaker*, 2023 WL 2472649, at *3 ("Cell phones do not present the same concerns as residential telephones."); *Bates v. I.C. Sys., Inc.*, No. 09-cv-103A, 2009 WL 3459740, at *2 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to cellular and residential lines.").

9

Though this distinction is evident from the text of the TCPA, the Court is not persuaded that cellular phones possess inherent characteristics that prevent them from benefitting from certain protections.  With the TCPA's stated purpose and the FCC's relevant regulations in mind, it follows that some, though not all, cellular phones are "residential."  First, since the TCPA was passed in 1991, cellular phones have become "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy."  *Riley v.* California, 573 U.S. 373, 385 (2014).  Accordingly, "the privacy interests they implicate are just as strong as wirelines, perhaps more so."  *Stevens-Bratton*, 437 F.Supp.3d at 656; *see Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 (3d Cir. 2017) ("[The TCPA's] expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls.").

Second, the FCC "has been clear in interpreting 'residential subscriber' to include cell phones" because "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *Hodgin v. Parker Waichman Llp*, No. 3:14-cv-733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015); 18 FCC Rcd at 14039.  Contrary to the arguments put forth by both OIS and SelectQuote, the FCC has "expressly rejected interpreting 'residential subscribers' narrowly to exclude cellular telephone numbers categorically."  *Stevens-Bratton*, 437 F.Supp.3d at 655-56 (citing 18 FCC Rcd at 14038).  Instead, the FCC "presume[s] wireless subscribers who ask to be put on the national do-not-call list to be residential subscribers." *Kemen*, 2023 WL 361136, at *5 (citing 18 FCC Rcd 14014, 14039).  Moreover, as the Western District of Tennessee observed in *Stevens-Bratton v. TruGreen, Inc.*, 47 C.F.R. § 64.1200(e) provides that "[t]he rules set forth in paragraph (c) and (d) of this section are <u>applicable</u> to . . . telephone solicitations . . .  to <u>wireless telephone</u>

10

numbers." 437 F.Supp.3d at 655 (emphasis in original). The FCC has therefore concluded that "residential telephone subscribers" can include "wireless subscribers" because "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." 18 FCC Rcd at 14038-39.

At this stage, Plaintiff's allegations are sufficient to establish that she is a residential telephone subscriber under the TCPA. Plaintiff has alleged that she maintains a telephone number, 330-XXX-8349, which is not associated with a business and is used for personal purposes. (Doc. No. 20 at ¶¶ 30-31.) Plaintiff alleges that this phone number has been on the DNC Registry since August 3, 2010. (*Id.* ¶ 32). Because Plaintiff's number is on the DNC Registry, the FCC's presumption that she is a residential telephone subscriber applies.[3] Plaintiff alleges she received multiple text messages from OIS on behalf of SelectQuote, despite having never solicited information from these businesses. (*Id.* ¶¶ 29, 36-37.) Together, these allegations state a claim for violations of the TCPA.

### III. CONCLUSION

For the reasons above, OIS's Motion to Dismiss (Doc. No. 28) and SelectQuote's Motion for Judgment on the Pleadings (Doc. No. 37) are DENIED.

**IT IS SO ORDERED.**

Date: September 20, 2023

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

---

[3] The Court need not consider whether it has jurisdiction under the Hobbs Act to determine the validity of the 2003 FCC Order. *Cf Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023) ("Given the Hobbs Act's provisions, this Court lacks jurisdiction to review the 2003 FCC Order. This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.").